1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANE M. SCOTT,                    )    No. C 06-2792 MMC (PR)
                                 )
            Petitioner,          )    **AMENDED\* ORDER DENYING**
                                 )    **PETITION FOR WRIT OF HABEAS**
    v.                           )    **CORPUS**
                                 )
S. GARCIA, Warden,               )
                                 )
            Respondent.          )
_____  )

        This is a federal habeas corpus action, filed pursuant to 28 U.S.C. § 2254, in which petitioner claims his convictions are unconstitutional.  For the reasons stated herein, the Court will deny the petition.

                        **PROCEDURAL BACKGROUND**

        In 2002, a Santa Clara County Superior Court jury convicted petitioner of four counts of lewdly touching a child under the age of fourteen, see Cal. Pen. Code § 288(c), and one count of misdemeanor assault, see id. § 240.  In addition, allegations that two of the lewd touching crimes involved substantial sexual contact, see id. § 1203.66(a)(8), were found true, as were allegations that petitioner had sustained four prior convictions, specifically,

_____

\* The sole amendment is to footnote 16.

three for residential burglary and one for burglary.[1]  The trial court imposed four consecutive

sentences of twenty-five years to life, totaling 100 years, as well as an additional ten years

based on sentencing enhancements.  Petitioner appealed.  The California Court of Appeal for

the Sixth Appellate District affirmed the judgment, struck the sentencing enhancements, and

denied petitioner's habeas petition.  (Ans. Ex. I at 3 & n.3)  The California Supreme Court

denied petitioner's petition for review.  (Pet. at 3.)  Petitioner also filed habeas petitions, both

later denied, in the California Superior Court and California Supreme Court.  (Id. at 4–5.)

## FACTUAL BACKGROUND

Evidence presented at trial showed that petitioner had sexual contact with two persons

under the age of eighteen, Sandra and Jamie.

Sandra's father, Jose, worked with petitioner.  One afternoon in 2000, petitioner

appeared at Jose's front door, and left after Sandra, aged fourteen, told him her father was not

at home.  The state appellate court described the subsequent events of the day as follows:

> After a few minutes Sandra went into the back yard to pick up trash that their
> two pit bulls, Ken and Barbie, had spilled.  [Petitioner] was sitting in the back
> yard, though she had neither invited him into the back yard nor given him
> permission to enter it.  He talked to her.  She did not reply.  As she picked up
> trash, he approached her from behind and grabbed around her chest[2] with both
> arms.  He squeezed her breasts hard with both hands.  [Petitioner] rubbed up
> against her from behind.  Her back felt his erect penis through their clothing.
> This continued for about five minutes.  Meanwhile the pit bull Barbie lay in the
> grass.
>
> Next [petitioner] put his right arm across Sandra's neck and shoulder and
> pulled her about 40 feet across the back yard to their garage.  Sandra was
> scared and told [petitioner] to let her go.  The garage door was broken.  A
> curtain was in its place.
>
> [Petitioner] took Sandra into the garage and sat her on a couch.  [Petitioner]
> held her on the couch with his hand on her shoulder and his arm across her
> throat.  He exerted enough pressure that it was hard for her to breath or scream.
> As [petitioner] began unbuckling his pants, Sandra summoned Barbie by
> clicking her tongue.  [Petitioner] let Sandra go when Barbie growled.

(Ans. Ex. I at 3–4).

---

[1] Ans. Ex. B, Vol. 4 at 813–15.

[2] Sandra testified that petitioner grabbed both her breasts.  (Ans. Ex. B, Vol. 1 at 192.)

United States District Court
For the Northern District of California

Jamie, who was then twelve, met petitioner in 1999 at a shopping mall. She asked him for money and got his cell phone number. After this meeting, petitioner visited Jamie at her house several times, occasionally at Jamie's invitation. During these visits, petitioner would touch her breasts and vaginal area both over and under Jamie's clothing. Often, petitioner would leave her money and occasionally buy beer for her. On two occasions, petitioner and Jamie had sexual intercourse in petitioner's truck. (Id. at 7–8.)

## DISCUSSION

As grounds for federal habeas relief, petitioner alleges: (1) the prosecutor engaged in misconduct in violation of petitioner's right to due process; (2) the trial court's admission into evidence of propensity evidence, and the jury instruction thereon, violated petitioner's rights to due process; (3) the trial court's disallowing testimony by a defense witness at sentencing, denying petitioner's request for transcripts for purposes of preparing a new trial motion, and imposition of consecutive sentences violated petitioner's rights to due process; (4) defense counsel rendered ineffective assistance in various ways; (5) the trial court violated his due process rights by allowing witnesses to vouch for the credibility of other witnesses, and by excluding impeachment evidence; (6) petitioner's second attorney provided ineffective assistance at the post-conviction proceedings; and (7) the California Court of Appeal's failure to consider a motion petitioner filed pro se in conjunction with his appeal violated his right to due process.

A.      Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

United States District Court
For the Northern District of California

1  Court of the United States; or (2) resulted in a decision that was based on an unreasonable

2  determination of the facts in light of the evidence presented in the State court proceeding." 28

3  U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000).  A federal court must

4  presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).  Habeas

5  relief is warranted only if the constitutional error at issue had a "'substantial and injurious

6  effect or influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>, 532 U.S. 782, 796

7  (2001).

8      The state court decision implicated by § 2254(d) is the "last reasoned decision" of the

9  state court.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–04 (1991); <u>Barker v. Fleming</u>, 423

10  F.3d 1085, 1091–92 (9th Cir. 2005).  When there is no reasoned opinion from the highest

11  state court to have considered the petitioner's claims, the district court looks to the last

12  reasoned state court opinion, which, in this instance, is the decision of the California Court of

13  Appeal on direct review of petitioner's conviction.  <u>See</u> <u>Nunnemaker</u>, 501 U.S. at 801–06;

14  <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

15  B.   <u>Petitioner's Claims</u>

16      1.   <u>Alleged Prosecutorial Misconduct</u>

17      Petitioner claims the prosecutor violated his right to due process when he committed

18  misconduct in various ways, as set forth below.  (Pet. at 6.)

19          (a)   <u>Comment on Defense Counsel</u>

20      Petitioner claims the prosecutor impugned the integrity of defense counsel by

21  characterizing his cross-examinations of Sandra and Jamie as what petitioner calls

22  "victimization."[3]  (Pet. App. A at 30.)  Defense counsel did not object to the prosecutor's

23  statements at trial.  The state appellate court rejected petitioner's claim, for the reason that it

24  did not regard the characterization as a personal attack on the integrity of defense counsel,

25

26      _____

27      [3] The prosecutor's comment was:  "If you want to know why sexual offenses go
    unreported, it's because girls have to come in and talk about this publicly, and be grilled by
    defense attorneys who point out that when a girl says and demonstrates this kind of a hold
28  (indicating), that when she one time describes it as grabbing her shoulder and one time
    describes it as grabbing her throat, that somehow she's now lying, they get victimized all
    over again."  (Ans. Ex. B at 728–29; Ex. I at 23.)

United States District Court

For the Northern District of California

1   nor did it "understand how this irrelevant assertion by the prosecutor could have influenced

2   the jury's deliberations."  (Ans. Ex. I at 23.)

3        A prosecutor may not gratuitously attack a defendant's choice of counsel or defense

4   counsel's integrity and veracity.  See Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983)

5   Nor may the prosecutor attack defense counsel's legitimate trial tactics.  See United States v.

6   Frederick, 78 F.3d at 1379–80.  There is no constitutional error, however, unless the

7   comments were so prejudicial as to deny the defendant a fair trial.  See United States v.

8   Rodrigues, 159 F.3d 439, 449–51 (9th Cir. 1998)

9        Here, petitioner has not shown the above-referenced comments rose to such level.

10  Indeed, the comments went more to the credibility of the prosecution's witness, and the

11  difficulties such witnesses experience in endeavoring to report traumatic events, than to the

12  tactics or character of defense counsel in general, let alone petitioner's counsel in particular.

13  Moreover, the remarks, even if deemed improper, constituted an isolated incident rather than

14  part of a larger pattern of discrediting defense counsel.

15       Accordingly, petitioner is not entitled to habeas relief on this claim.

16            (b)    Alleged Altering of Audiotape

17       Petitioner claims the prosecutor altered a recording of a telephone conversation before

18  submitting a copy of the recording into evidence.[4]  Petitioner "submits that major points of

19  exculpatory statements made by him were edited, erased, or manipulated (eliminating

20  portions) to give inference of guilt throughout the tape recorded phone conversation."  (Pet.

21  App. B at 20.)

22       At trial, the prosecutor submitted into evidence an audiorecording of a telephone

23  conversation that had taken place between petitioner and Jamie.  Jamie, at the request of the

24  police, had spoken to petitioner by telephone and pretended she was pregnant, in an attempt

25  to get him to make incriminating statements; the conversation was recorded.  (Ans. Ex. I at

26

27       [4] Petitioner raised this claim only in his petition to the California Supreme Court,
    which issued a summary denial of the petition.  (Ans. Ex. R at 3.)  Because the claim was not
28  presented to the state appellate court, that court did not address this claim in its above-
    referenced written opinion.

United States District Court

For the Northern District of California

10.)  During that conversation, petitioner made the following statements to Jamie:  (1) "I was like, I got hard for you a bunch of times and I go like, I was like ready to go over there and leave some money on your window," and (2) in describing how he would characterize his conduct, "I treated her . . . I gave her love."  (Pet. Ex. C at 2.)  Petitioner, however, also repeatedly asserted in the conversation that he never had sex with Jamie, (id. at 8), adamantly denied that he was the father of her child, (id.), and blamed her pregnancy on her promiscuous relations with other men (id. at 11).  Defense counsel did not object to the introduction of the tape.

In support of his claim, petitioner has submitted two reports written by professional sound technicians regarding the recording.  In the first, the sound technician notes the presence of many "abnormalities" which led to the technician's conclusion that the recording "contains evidence of discontinuities and is not a continuous record."[5]  (Pet., Ex. D at 1–3.)  In the second report, the sound technician states that he noted "serious abnormalities, including magnetic signatures and impulse signatures in several places which are consistent with altering or editing having occurred, at least to this copy."  (Id. Ex. E at 2.)

Petitioner, however, has not shown any such possible alteration was prejudicial.  In particular, there is no indication that the part of the recording containing petitioner's incriminating statements was altered or otherwise inaccurate.   Indeed, the statements made by petitioner do not constitute admissions that he committed the charged acts, but rather vehement denials of any wrongdoing.

Accordingly, petitioner is not entitled to habeas relief on this claim.

(c)     Alleged Coercion of Jamie

Petitioner claims the prosecutor coerced Jamie to testify by threatening her with prosecution for a burglary petitioner claims she committed.[6]  (Pet. App. B at 23.)  Petitioner,

---

[5] The technician also noted that one of the statements made by petitioner in the recording was not contained in the transcript.  (Id. at 2.)

[6] Petitioner also contends the prosecutor withheld from the jury information that Jamie had run away from home to avoid testifying.  This fact, however, was expressly elicited at trial by the prosecutor.  (Ans. Ex. B at 349.)  Petitioner also alleges the prosecutor withheld from the jury information that Jamie was a prostitute, that Jamie had been "hustling" money

United States District Court

For the Northern District of California

1   however, points to no evidence that Jamie could have been charged with burglary, let alone

2   that the prosecutor threatened her with prosecution for such alleged crime.

3        Accordingly, petitioner is not entitled to habeas relief on this claim.

4        2.    Propensity Evidence

5        Petitioner claims the trial court violated his right to due process by instructing the jury

6   that it could find petitioner had a disposition to commit sexual offenses if it found petitioner

7   had committed one of the charged sexual offenses.[7]  (Pet. App. A at 7.)  Although the trial

8   court did instruct the jury as petitioner describes, the trial court also instructed the jury that it

9   could not find petitioner guilty of any charged offense based solely on a finding, even if

10  beyond a reasonable doubt, that petitioner had committed any other charged offense.  (Ans.

11  Ex. I at 24–25.)  The state appellate court rejected petitioner's claim on state law grounds.

12  (Id. at 30.)

13       Petitioner's claim fares no better under federal law.  The Supreme Court has left open

14  the question of whether admission of propensity evidence violates due process.  Estelle v.

15  McGuire, 502 U.S. 62, 75 n.5 (1991).  Given the Supreme Court's reservation of this issue as

16  an "open question," the Ninth Circuit has held a petitioner, such as the instant petitioner, has,

17  for purposes of AEDPA, no clearly-established due process right based on the admission of

18  propensity evidence.  Alberni v. McDaniel, 458 F.3d 860, 866–67 (9th Cir. 2006).

19       Accordingly, petitioner is not entitled to habeas relief on this claim.

20       3.    Trial Court's Alleged Errors

21       Petitioner claims the trial court violated his right to due process by (a) not allowing a

22  defense witness to testify at the sentencing hearing; (b) denying petitioner's requests for

23  transcripts; and (c) imposing consecutive sentences.  (Pet. at 6.)

24

25  ─────────────

26  from petitioner, and that she had threatened him with arrest when he stopped giving her
    money.  (Pet. App. B at 23.)  It was not the prosecutor, however, who withheld such

27  information from the jury.  Rather, it was the trial judge, who precluded its introduction in
    evidence for the reason there was insufficient evidence to support petitioner's assertions.

28       [7] Petitioner also claims, without elaboration, this instruction violated his right to equal
    protection.  Because petitioner's contentions are directed solely to due process, the Court
    does not address herein petitioner's unsupported equal protection claim.

7

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a)     Disallowing Examination of a Witness

Petitioner claims that the trial court violated his right to due process by not allowing an expert witness to testify at the hearing on his motion to strike his prior convictions.  (Pet. at 6.)  The state appellate court rejected this claim, finding no violation of petitioner's state or federal constitutional or statutory rights had been shown.  (Ans. Ex. I at 32–33.)

The record with respect to this claim reflects that following his conviction, petitioner filed a Romero motion asking the trial court to strike two of his three prior residential burglary "strike" convictions.[8]  Appended to the motion was a 19-page letter report from Brian Abbott, Ph.D., a licensed clinical social worker hired by defense counsel, in which Abbott provided a "forensic evaluation" of petitioner.  (Id. At 30; Ex. A, Vol. 3 at 632.)  In this evaluation, Abbott, according to the state appellate court, "concluded among other things that [petitioner] exhibited traits more consistent with an impulsive rapist than an entitlement rapist or a sadistic rapist."  (Id. at 30.)  At the hearing on the motion, defense counsel sought to call Abbott, who was present in the courtroom, to testify.  The trial court denied the request, noting the proceeding was not an evidentiary hearing.  (Id. at 31.)

Petitioner has not shown there exists a clearly established federal constitutional right to call witnesses at a hearing on a Romero motion.  With one exception, the legal authorities on which petitioner relies concern the presentation of testimony at trial.  The one exception, Oyler v. Boles, 368 U.S. 448 (1962), recognized a criminal defendant's right to reasonable notice and an opportunity to defend against a recidivist charge.  Unlike the petitioner in Oyler, however, petitioner here was not seeking an opportunity to be heard on a substantive or procedural challenge to the recidivist charge itself; rather, by his Romero hearing, petitioner sought an opportunity to challenge the use of charges that already had been found true.  Indeed, at a separate proceeding prior to such hearing, petitioner had been provided,

---

[8] Petitioner's motion was based on People v. Superior Court (Romero), 13 Cal. 4th 497, 504 (Cal. 1996).  Under Romero, a sentencing court may strike a prior felony conviction allegation "in furtherance of justice," a concept described by the California Supreme Court as "amorphous," but, at a minimum, requiring the trial court to consider both "the rights of the defendant and the interests of society as represented by the People."  Id. at 530.

United States District Court

For the Northern District of California

1  consonant with <u>Oyler</u>, reasonable notice and an opportunity to be heard on the charges

2  themselves.

3       Finally, not only has petitioner failed to show that he has a federal constitutional right

4  to call witnesses at his <u>Romero</u> hearing, but petitioner has not shown how Abbott's

5  evaluation of him as an impulse rapist is related in any way to petitioner's four <u>burglary</u>

6  convictions.

7       Accordingly, petitioner is not entitled to habeas relief on this claim.

8            (b)      <u>Denial of Trial Transcript</u>

9       Petitioner claims the trial court violated his right to due process when it refused to

10 order the court reporter to prepare a transcript for petitioner to use in his motion for a new

11 trial.  (Pet. at 6.)  The trial court refused to grant petitioner's request for a trial transcript on

12 the ground that it would take the court reporter three to four months to complete such a

13 transcript, thereby unreasonably delaying the imposition of sentence.  The trial court also

14 refused to grant petitioner an extension to file a motion for a new trial at such time as the

15 transcript was completed.  (Ans. Ex. I at 40–41.)  The state appellate court rejected

16 petitioner's claim, finding defense counsel's "speculative showing [that a motion for a new

17 trial would be meritorious] did not warrant a three-to-four-month postponement of

18 sentencing."  Further, the state appellate court reasoned, defendant's "inability," on appeal,

19 "to establish the need for a new trial strongly suggest[ed] that he would have fared no better

20 had he been in possession of the 821-page trial transcript in the trial court."  (<u>Id.</u> at 42.)

21      This Court agrees that petitioner has not shown a constitutional violation and, in

22 particular, petitioner has not shown he has a clearly established federal constitutional right to

23 a trial transcript.  While an indigent criminal defendant has a right to a free transcript for

24 purposes of filing for direct review in an appellate court, <u>see</u> <u>Britt v. North Carolina</u>, 404

25 U.S. 226, 227 (1971), petitioner has not shown he has a clearly established right to a

26 transcript for purposes of filing a motion for a new trial.

27      Accordingly, petitioner is not entitled to habeas relief on this claim.

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(c)     Consecutive Sentences

Petitioner claims the trial court violated his Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000), when it imposed consecutive sentences.  (Pet. at 6.)  The state appellate court rejected petitioner's claim, concluding the imposition of consecutive sentences did not violate Apprendi.  (Ans. Ex. I at 39.)

As set forth by the Supreme Court in Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  As further set forth in Apprendi, the "statutory maximum" is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather the maximum such judge could impose without any additional findings.  Blakely v. Washington, 542 U. S. 296, 303–04 (2004).

As noted, Apprendi as well as cases decided subsequent thereto address whether a sentencing judge can impose a higher sentence for a single offense, not whether such judge can impose consecutive sentences for multiple offenses.  Consequently, Apprendi is inapplicable to petitioner's claim.

Accordingly, petitioner is not entitled to habeas relief on this claim.

4.     Alleged Ineffective Assistance of Counsel

Petitioner claims defense counsel rendered ineffective assistance in various ways.  (Pet. at 6–6(a).)

Claims of ineffective assistance of counsel are examined under Strickland v.Washington, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things.  First, he must establish his counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687–68.  Second, he must establish he was prejudiced by his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

United States District Court

For the Northern District of California

1  different." Id. at 694.  A reasonable probability is a probability sufficient to undermine

2  confidence in the outcome.  Id.  If a petitioner cannot establish incompetence under the first

3  prong of the Strickland test, it is unnecessary for the court to address the second prong.  See

4  Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

5       Here, petitioner makes the following claims.

6            (a)    Failure to Object to Propensity Instruction

7       Petitioner claims defense counsel rendered ineffective assistance when he did not

8  object to the trial court's instructions on the use of propensity evidence.[9]  (Pet. App. A at 18.)

9  Petitioner's claim is without merit.  As discussed above, petitioner, for purposes of AEDPA,

10  has no clearly-established due process right based on the admission of propensity evidence.

11  Consequently, petitioner cannot show he was prejudiced by any failure on the part of defense

12  counsel to object to such instruction.

13       Accordingly, petitioner is not entitled to habeas relief on this claim.

14            (b)    Agreeing to Admission of Audiorecording

15       Petitioner claims defense counsel rendered ineffective assistance when he agreed to

16  the admission of the above-described audiorecording of a telephone call, and when he failed

17  to have the recording analyzed.  (Pet. App. B at 25.)  As discussed above, however, the Court

18  has concluded that even if the recording was in some manner altered, there is no evidence or

19  other showing that the portion of the recording that contained petitioner's arguably

20  incriminating statements or his protestations of innocence were other than complete and

21  accurate.  Consequently, petitioner has not shown defense counsel's agreeing to the

22  admission of the tape, and/or any failure to have it analyzed, resulted in prejudice to him.

23       Accordingly, petitioner is not entitled to habeas relief on this claim.

24            (c)    Allegedly Improper Questions of/Remarks to Petitioner's Wife

25       Petitioner claims defense counsel rendered ineffective assistance when he and/or his

26

27       [9] Although the state appellate court mentioned this ineffective assistance claim (Ans.
Ex. I at 25), the claim was never expressly determined.  As noted, however, the state
28  appellate court found petitioner was not prejudiced by the instruction (id. at 30);
consequently, it would appear the claim was denied.

United States District Court

For the Northern District of California

1  investigator asked petitioner's wife questions concerning their sex life and by his making

2  inappropriate comments to petitioner's wife, such as, "How did a nice girl like you get

3  involved with a man like him?"  Given the nature of the charges against petitioner, however,

4  such questions were a proper subject of inquiry, and the comments have not been shown to

5  be anything more than an attempt at humor, whether or not ultimately successful in that

6  regard.  (Pet. App. B at 25, 28.)

7       Accordingly, petitioner is not entitled to habeas relief on this claim.

8            (d)      Impeaching Jamie

9  Petitioner claims defense counsel rendered ineffective assistance when he failed to

10  challenge the veracity of Jamie's testimony and to adequately investigate a defense that

11  petitioner could not have committed the charged crimes because he was elsewhere when they

12  occurred.  (Pet. at 6(a).)

13  Contrary to petitioner's assertion, the record demonstrates that defense counsel did

14  challenge Jamie's testimony.  Specifically, defense counsel brought out that Jamie sometimes

15  called petitioner herself and that she was interested in petitioner for his money.  Defense

16  counsel also brought out that Jamie was unsure of the dates on which she had sex with

17  petitioner and as to the vehicle in which the acts occurred, an admission of some significance

18  in that no blood or semen was found in petitioner's trucks.  Additionally, defense counsel

19  obtained a stipulation that Jamie was pregnant with a child fathered by someone other than

20  petitioner.  (Ans. Ex. I at 9–10.)

21  Petitioner also contends defense counsel failed to impeach Jamie with evidence that,

22  according to petitioner, showed she was a prostitute who sold her body to procure drugs.

23  Petitioner bases this allegation on a statement made to the police by Susana, one of Jamie's

24  friends, that in 2001, Jamie was staying at a motel with a man (Ans. Ex. B, Vol. 1 at 96-97),

25  and on statements of a similar nature that, petitioner asserts, were made by Susana off the

26

27

28

United States District Court

For the Northern District of California

1    record at the preliminary hearing.[10]  (Pet. App. B at 29.)  The trial court ruled Susana's

2    statements to the police were irrelevant.  (Ans. Ex. B, Vol. 1 at 97.)  Because defense counsel

3    was prevented by the trial court's ruling from presenting evidence of such nature,  petitioner

4    has not shown his trial counsel's performance was deficient.

5           As to petitioner's whereabouts at the times of the charged offenses, petitioner has not

6    shown an investigation thereof would have provided convincing evidence.  Indeed, petitioner

7    himself offers no such information.  In a declaration appended to petitioner's petition to the

8    California Supreme Court, on which petitioner relies herein, petitioner's wife purports to

9    account for petitioner's time from November 2000 to January 2001,[11] part of the total period

10   during which petitioner was alleged to have had sexual contact with Jamie.[12]  (Pet. Ex. I;

11   Ans. Ex. B, Vol. 3 at 636; Ex. I at 7-8.)  The declaration, however, is not sufficient to show

12   defense counsel's performance was deficient. First, petitioner has never denied either

13   knowing or having spent time with Jamie.  Rather, the gravamen of petitioner's defense was

14   that he never engaged in inappropriate sexual conduct with her.  Moreover, Jamie, in her

15   testimony, did not give specific dates for their encounters, but, rather, testified that petitioner

16   came over to her house "five or six" times during 2000.  (Ans. Ex. B, Vol. 2 at 410.)  Finally,

17   the declaration does not include petitioner's whereabouts on many of the dates in the time

18   period to which it relates, and in many instances, for the days it does include, only portions of

19   those days are accounted for and/or there is no showing that petitioner, and not his wife

20

21

22   _____

23           [10]Although petitioner asserts Susana testified at the preliminary hearing, petitioner is
     incorrect in that regard.  Jamie was the only witness at that proceeding who testified with
24   respect to the charges in which Jamie was alleged to be a victim.  (Ans. Ex. A, Vol. 1.)

25           [11]Petitioner's wife, Connie Scott ("Scott"), testified at trial, but was not asked about
     the alibi evidence.  (Ans. Ex. B, Vol. 3 at 591-694.)  Scott asserts in her declaration that she
26   supplied the alibi evidence to defense counsel "but he never used this information during the
     trial."  (Pet. Ex. I at 1.)

27
             [12]That time frame, as alleged in the First Amended Information, spanned a period
28   beginning in December 1999 and ending on December 31, 2000, and was later amended to
     extend to January 26, 2001.  (Ans. Ex. A, Vol. 2 at 446-48; id. Ex. B, Vol. 3 at 636.)

1   alone, was engaged in the activities described.[13]  Because petitioner has failed to show that he

2   in fact had an alibi, petitioner has not shown defense counsel's failure to investigate a

3   defense to that effect was either deficient or prejudicial.

4         Accordingly, petitioner is not entitled to habeas relief on this claim.

5         (e)      Failure to Object to Medical Testimony

6         Petitioner claims his trial counsel rendered ineffective assistance when he did not

7   object to the testimony of Mary Ritter, a physician assistant who examined Jamie for

8   evidence of genital injuries.[14]  In particular, petitioner contends, defense counsel should have

9   objected to Ritter's testifying without being expressly qualified as an expert witness.  (Pet.

10  App. B at 32–33.)  The state appellate court rejected this claim, stating:  "Since it appears

11  that Ritter was qualified to render the opinion she offered, we conclude that it was not

12  incompetent for defense counsel to fail to object to her expertise."  (Ans. Ex. I at 19–20.)

13        Petitioner's claim is without merit.  As the state appellate court noted, Ritter had

14  extensive experience with respect to the type of examination performed, and she clearly met

15  the requirements of California law for the admission of expert testimony on that subject.  See

16  Cal. Evid. Code § 720(a) ("A person is qualified to testify as an expert if he has special

17  knowledge, skill, experience, training or education sufficient to qualify as an expert on the

18  subject to which his testimony relates.")  Additionally, as discussed above, a federal court

19  must presume the correctness of the state court's factual findings.  See 28 U.S.C.

20  § 2254(e)(1).  Petitioner points to nothing in the law or evidence to rebut such presumption.

21        Accordingly, petitioner is not entitled to habeas relief on this claim.

22

23

24        [13]Further, petitioner claims he was living in Southern California during the period
25  encompassing the latter half of November 2000 through the end of that year (Pet. App. B at
    30-31), whereas, according to the above-referenced declaration given by his wife, they had
26  returned to the San Francisco Bay Area on November 27, 2000 and remained there until
    December 25, 2000, after which she and petitioner left the area for approximately a week and
27  then returned to San Jose.  (Pet. Ex. I at 3-6.)

28        [14] Ritter testified she found two indicators of penetrating genital trauma.  (Ans. Ex. I at
    18–19.)

14

United States District Court

For the Northern District of California

(f)     Investigation of Strike Conviction

Petitioner claims defense counsel rendered ineffective assistance of counsel when he failed to challenge at petitioner's sentencing hearing the validity of petitioner's 1986 and 1995 convictions for residential burglary.  As noted, the jury, at a separate proceeding following petitioner's conviction, found petitioner had suffered four prior convictions, including the 1986 and 1995 convictions.

Petitioner pleaded guilty in 1986 and 1995, but now claims both pleas were invalid because he had bipolar disorder at the time he entered the pleas, and that his 1995 plea was invalid for the additional reasons that his then defense counsel refused to help him present a defense and because he was not taking medication for his bipolar condition.  (Pet. App. B at 35–36 & 38–39.)  The transcripts of the hearings at which those two pleas were entered contain no indication that petitioner's guilty pleas were anything other than knowing, intelligent, and voluntary.  (Pet. Exs. F & G.)

Accordingly, petitioner is not entitled to habeas relief on this claim.

5.     Trial Court's Alleged Errors

Petitioner claims the trial court violated his right to due process when it  (a) allowed two witnesses, Amy Williams and James McQueen, to vouch for Sandra's credibility, and (b) excluded impeachment evidence.  (Pet. App. A at 32–33 & 35.)

(a)     Alleged Vouching

At trial, Amy Williams, Sandra's psychotherapist, described Sandra  as having "a flat effect" during her therapy sessions at which the assault was discussed.  Williams further testified that "it's just not unusual to . . . be detatched from discussing the event," which is "kind of reliving an experience," and is "very traumatizing."  (Ans. Ex. I at 14, 15.)

James McQueen, an elder in the Jehovah's Witnesses, petitioner's church, also testified at trial.  McQueen testified he had been consulted by Sandra's parents after the incident but before charges were filed against petitioner and that he advised them to call the police if they felt threatened by him.  As the state appellate court put it, Sandra's parents reported the incident to the elders of petitioner's church in the hope that "the elders could

help [petitioner] and make sure he would not act that way again." (Ans. Ex. I at 5.) At trial, McQueen testified that during his meeting with Sandra he felt she "wasn't being very open with her comments" (<u>id.</u> at 15), and in response to the prosecutor's question as to whether McQueen felt Sandra was "withholding something," McQueen testified, "It appeared so." (<u>Id.</u>)

Petitioner contends that Williams and McQueen, by making these statements, vouched for Sandra's credibility, and that by vouching for her credibility, the witnesses violated his due process rights because they usurped the jury's task of determining credibility. The state appellate court rejected petitioner's claims, finding Williams and McQueen did not offer an opinion on Sandra's credibility. (Ans. Ex. I at 17, 18.)

This Court agrees. At the outset, it should be noted that petitioner has not pointed to any legal authority suggesting a witness who vouches for the credibility of another witness thereby violates a criminal defendant's clearly established federal rights. Moreover, as the state court of appeal found, the statements cannot be said to be vouching for Sandra's credibility. If anything, Williams's testimony that she felt Sandra appeared detached, when recounting what ordinarily would be considered a traumatic event, would tend to make Sandra less, rather than more, believable. Similarly, McQueen's testimony that Sandra was not being "open" in her statements tends to make Sandra less credible rather than more so. On this record, the Court concludes petitioner has not shown the trial's court allowance of such testimony violated his due process rights.

Accordingly, petitioner is not entitled to habeas relief on this claim.

(b)   <u>Exclusion of Impeachment Evidence</u>

As part of his defense, petitioner sought to establish that Sandra had given him permission to enter her backyard so that petitioner could give the dogs some toys. At trial, defense counsel asked Sandra whether petitioner had told her he was bringing toys to her dogs. The trial court sustained the prosecutor's hearsay objection, initially during Sandra's testimony and thereafter, outside the jury's presence, when defense counsel again sought the trial court's permission to pose the question. (Ans. Ex. I at 20.)

**United States District Court**

For the Northern District of California

Petitioner contends the trial court's disallowance of such testimony prevented petitioner from impeaching Sandra's credibility. During McQueen's testimony, however, petitioner was allowed to introduce evidence that petitioner had said something to Sandra and, as described by McQueen, she responded, "Go ahead [the dogs] were in the back." (Id.) The state appellate court, in rejecting petitioner's due process claim, found any testimony by Sandra as to whether she had given petitioner such permission was "collateral to the charged crimes of lewd touching, assault, and false imprisonment." (Id. at 21.)

This Court agrees that the claim is without merit. The exclusion of the proffered evidence resulted in no prejudice to petitioner, and particularly given the introduction of essentially equivalent evidence through McQueen's testimony.

Accordingly, petitioner is not entitled to habeas relief on this claim.

6.    Assistance of Substituted Counsel

Petitioner claims new counsel, who was substituted after petitioner was found guilty, rendered ineffective assistance when she failed to file a motion for a new trial, hired a mental health expert whose report was damaging to petitioner, failed to request a partial trial transcript, filed a flawed motion to strike petitioner's prior convictions, and failed to communicate with petitioner and his wife.[15]  (Pet. App. B at 42–43.)

After the jury returned its verdict, petitioner retained new counsel, Jamie Harmon ("Harmon"). Harmon moved for a continuance of sentencing and for a complete transcript of the trial. The trial court granted the motion for a continuance, and denied the motion for a complete transcript, but stated it would consider a motion for a partial trial transcript. Harmon subsequently filed a motion to strike petitioner's "strikes," but did not ask for a partial trial transcript or file a motion for a new trial. (Ans. Ex. I at 40–41.)

Under Strickland, petitioner bears the burden of demonstrating Harmon's performance was deficient, and that but for such deficient performance, a reasonable possibility exists that

---

[15] Petitioner raised this claim only in his petition to the California Supreme Court, which issued a summary denial of the petition. (Ans. Ex. R at 3.) Because the claim was not presented to the Court of Appeals, that court did not address the claim in its above-referenced written opinion.

United States District Court

For the Northern District of California

1   the outcome of the proceeding would have been different.

2       Petitioner has not made the requisite showing under <u>Strickland</u>.  Petitioner's claim is

3   predicated primarily on Harmon's failure to file a motion for a new trial and petitioner's

4   assertion that Harmon's motion to strike petitioner's convictions was flawed by its inclusion

5   of Abbott's report.

6       With respect to the former, California Penal Code section 1181 lists nine distinct

7   predicates for a motion for a new trial, and provides the exclusive grounds upon which a state

8   trial judge may award such relief.  <u>See</u> <u>Menefield v. Borg</u>, 881 F.2d 696, 699 (9th Cir. 1989).

9   Here, petitioner has not identified the grounds on which a § 1181 motion could have been

10  based, let alone demonstrated a reasonable probability that any such motion would have

11  succeeded.[16]

12      With regard to the <u>Romero</u> motion, petitioner argues Harmon should not have

13  submitted Abbott's report to the trial court.  As reflected in the record, Harmon's decision to

14  include the Abbott report was a reasonable tactical decision and, as such, is entitled to

15  deference.  <u>See</u> <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994) (holding tactical

16  decisions of trial counsel deserve deference where based on strategic considerations informed

17  by adequate investigation, and appear reasonable under circumstances presented).

18  Specifically, much of the Abbott report paints a sympathetic portrait of petitioner as a person

19  with a severely damaging background.  (Ans. Ex. A Vol. 2 at 355-59.)  Additionally, with

20  respect to the propensity for criminal sexual conduct, Abbott wrote that petitioner "shows a

21  low potential for matching the profile of a sexually violent offender" (<u>id.</u> at 370), and

22  exhibited no interest in prepubescent children (<u>id.</u> at 372).  Although Abbott also described

23  petitioner as "an impulsive, opportunistic rapist" (<u>id.</u> at 370-71), Abbott sought thereby to

24

25  _____

26      [16]The statutory grounds include various forms of jury and prosecutorial misconduct, instructional error, and insufficiency of the evidence.  (<u>See</u> Cal. Pen. Code §1181.)  As discussed above, to the extent petitioner has asserted herein any error on the part of the

27  prosecutor, the trial court, or his former trial counsel, no constitutional error has been shown. The Court finds any motion for a new trial based thereon likewise would not have succeeded,

28  and, consequently, any failure on the part of Harmon to raise any such issue by a motion for new trial was not prejudicial.

United States District Court

For the Northern District of California

1   distinguish petitioner from the more dangerous category of "predatory types of rapists" (id. at

2   371).

3       Under such circumstances, defense counsel had two choices; she could either submit

4   the report in its entirety or forego presenting Abbott's expert opinion in mitigation of the

5   sentence.  The fact that counsel was unsuccessful in obtaining a reduced sentence does not

6   demonstrate her choice to offer the evidence was unreasonable.  Indeed, in another claim,

7   petitioner contends the trial court committed prejudicial error by not allowing Abbott to

8   testify.

9       Moreover, the record reflects that the trial court, in denying the motion, ultimately

10  accorded little or no significance to the Abbott report.  Rather, the trial judge relied in

11  particular on petitioner's ten prior felony convictions, his numerous misdemeanor

12  convictions, the fact that petitioner had served time in prison, and petitioner's denial at trial

13  of any wrongdoing in the face of strong evidence of petitioner's guilt, which evidence, the

14  trial court stated, it personally believed.  Consequently, Harmon's decision to submit the

15  Abbott report, even if deemed erroneous, was not prejudicial.

16      Petitioner's next contention, that Harmon failed to have the audiotape of petitioner's

17  conversation with Jamie analyzed, likewise lacks merit.  As discussed above, the reports

18  prepared by the sound technicians contain no indication that any significant statement in the

19  recording was altered in any manner.

20      Finally, petitioner has not shown how any asserted failure to communicate with

21  petitioner or his wife adversely affected Harmon's legal representation of petitioner.

22      Accordingly, petitioner is not entitled to habeas relief on this claim.

23      7.    Appellate Court's Refusal to Consider Motions

24      Petitioner claims the state appellate court violated his right to due process when it

25  failed to consider motions and other papers he submitted in support of his appeal.  (Pet. at

26  6(a).)  On direct appeal, petitioner was represented by counsel.  During the time his appeal

27  was pending, petitioner sent the appellate court "pro se legal documents," which, petitioner

28  claims, were "critical to his fully developing the edited and false evidence of the pre-text

19

1   [sic] tape recorded conversation that the jury relied on for conviction."  (Ans. Ex. T at 9.)

2       Petitioner's claim is foreclosed by both state and federal law.  In California, all

3   appellate filings must be prepared and filed by counsel of record and may not be submitted

4   pro se, see  In re Barnett, 31 Cal.4th 466, 473 (Cal. 2003), and, under federal law, states are

5   not required to "recognize a constitutional right to self-representation on direct appeal."

6   Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 163–64

7   (2000).

8       Because petitioner was not counsel of record, and thus was not entitled to submit

9   filings "pro se" on appeal, the state appellate court did not violate his right to due process by

10  any alleged failure to consider such purported pro se filings.

11      Accordingly, petitioner is not entitled to habeas relief on this claim.

12                            **CONCLUSION**

13      For the foregoing reasons, the Court concludes the California Court of Appeal did not

14  render a decision that was contrary to, or constituted an unreasonable application of, clearly

15  established federal law, or that entailed an unreasonable determination of the facts.

16      Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

17      The Clerk shall enter judgment in favor of Respondent and close the file.

18      **IT IS SO ORDERED.**

19  DATED: October 7, 2009

20                            MAXINE M. CHESNEY
                              United States District Judge

21

22

23

24

25

26

27

28

20